---

(55 Misc. Rep. 151.)

### In re TIFFT'S WILL.

#### (Surrogate's Court, Erie County.   June, 1907.)

1. WILLS—COMPETENCY OF TESTATOR—EVIDENCE.

   Pending proceedings by testator's wife to have him declared incompetent on account of being a habitual drunkard, he left his home, and took up his residence with a woman who served him as a nurse up to within a short time of his death. Meantime he executed two holographic wills, giving his wife what she was "entitled to by law." The last will was duly executed about a year prior to his death, and about three months before he paid his wife $15,000 in cash and conveyed to her certain real estate on her releasing him and his estate from any further claim; the settlement being equivalent to more than one-third of his estate. The last will, after providing for his mother, nurse, and several friends, gave the residue of his estate to his sister and nephew. The only evidence impeaching testator's testamentary capacity was that of an alienist based on hypothetical questions. *Held*, that the will would be admitted to probate.

2. SAME—WEIGHT OF EVIDENCE.
> Where expert testimony as to the testamentary capacity of testator is in conflict with that of subscribing witnesses, one of whom is a physician, the testimony of the subscribing witnesses should prevail.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 713.]

3. SAME—INCOMPETENCY BY DRUNKENNESS.
> A will by a drunkard is valid, if at the time of its execution he knew the nature and disposition of his estate and his relations to those having any claim on his bounty.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 89–91.]

In the matter of the last will of James W. Tifft, deceased. Probate decreed.

See 101 N. Y. Supp. 1072.

Titus & Ladd, for proponent.

Moot, Sprague, Brownell & Marcy, for contestants.

Jacob Stern, for Nathaniel W. Norton (named as executor in will dated April 26, 1901).

Moses Shire, for legatee Prissa A. Canfield.

Charles C. Farnham, for legatee Eliphalet T. Tifft.

HART, S. Three wills of James W. Tifft, deceased, have been presented to this court, accompanied by petitions praying for probate. Answers and objections having been regularly filed, the proceedings were consolidated, and proofs taken in one proceeding. The greater part of the testimony was taken before my predecessor in office; the balance being taken before me by the consent of all parties, and briefs submitted by respective counsel. Each of the wills is holographic, written in bold, legible hand, indicating the testator to have been an experienced and skilled penman. The testator died June 30, 1904, at about the age of 66, leaving him surviving his mother, sister, widow, one son, and collateral relatives. The first will is dated June 17, 1885. After making specific bequests to relatives, the testator gives and devises the residuary estate to his wife, Joan C. Tifft, absolutely, expressing the belief "that she will provide for and dispose of the same to her son." The second will, dated April 20, 1902, contains several bequests to relatives, some charitable bequests, and the residue to Nathaniel W. Norton; "he being, next to my mother, the best friend I ever had in this my somewhat eventful life." The third, and last, will is dated June 24, 1903, makes provision for the care of his mother, contains legacies of specific amounts to relatives, bequeaths to Mrs. M. A. Condon, his personal effects and $3,000 in money "to partly pay her for her good judgment and quick action in saving my life on two occasions," to Charles M. King his library, and to Mr. King's daughter $1,000, "having done business with Mr. King for thirty years, and him and his family seem dear to me." He then provides for the sale of his property, directs as to the disposition of his remains, and gives the residue of his estate to his sister and nephew, share and share alike, appointing Charles M. King his executor, and revokes prior wills. The second and third wills each contain the provision:

"To my wife, Joan C. Tifft, what she is entitled to by law, deeming that sufficient, she being already possessed of a goodly sum."

The three wills offered for probate represent three distinct epochs in the life of the testator; and the narrative of his life, which he modestly but appropriately characterizes in his second will as "somewhat eventful," must be read in conjunction with the conflicting testamentary provisions to explain the variance.

The testator had been a soldier and served with distinction during the Civil War. He received a bullet wound in the hip, which occasioned him considerable pain and trouble, resulting in an operation for its removal in later years. He was married shortly after the War, and, up to the year 1885, when the first will was executed, Mr. Tifft, his wife and son were evidently upon excellent terms. The testator engaged in the milk business up to the year 1886. He was a successful business man, and accumulated considerable property. At about this time he retired and engaged in no other business, except caring for his own property and investments. Mr. Tifft in health, was a strong, rugged, well-developed man, physically and mentally. In later years he suffered from various afflictions, asthma, paralysis, and heart failure, largely aggravated by his excessive use of intoxicating liquor. He drank more or less during his whole life. He was always careless about his dress and personal appearance. He smoked and chewed tobacco, and was boisterous and often profane in conversation. It also appears that he was considered among his friends and associates as a shrewd, bright business man, of forceful character, and was also stingy and parsimonious. His domestic relations became strained; and, although occupying the same house for years, he and his wife practically lived separate and apart. During the year 1901 Mrs. Tifft instituted a proceeding to have him declared incompetent on account of being a habitual drunkard. A trial was had extending over considerable time, resulting in a verdict of a jury declaring him incompetent. While the trial was pending Mr. Tifft left his home and took up his residence with a Mrs. Condon. Mr. Tifft was represented by Nathaniel W. Norton, as counsel, during the incompetency proceeding. His counsel was successful in procuring the verdict set aside, on account of irregularity, by Justice Lambert, in April, 1902. No other trial was ever had, and the testator continued to live at Mrs. Condon's; she taking care of him up to a time shortly prior to his death, when he removed to his own home, which was then unoccupied. Mrs. Condon served him faithfully as a nurse, and, on certain occasions of collapse from heart failure, administered powerful stimulants to revive him. The evidence discloses a modification of Mr. Tifft's habits at about the time of the incompetency proceedings, and a realization that a continuation of his excesses would result in the control of his property being taken from him. Shortly after the verdict had been set aside the second will, of April 26, 1902, was executed, wherein Mr. Norton was made the residuary legatee and executor of the will. This instrument was carefully prepared and witnessed by three physicians, for obvious reasons. Mr. Norton subsequently presented a bill for $12,000, or thereabouts, for legal services, which Mr. Tifft deemed exorbitant and excessive, and friendly relations between them ceased. Mr. Norton then sued Mr. Tifft for the amount of his bill. The third and last will, of June 24, 1903, was executed at the house of Mrs. Condon. The testator at this

time is at serious difference with his wife. He has been annoyed with his son on account of an unpaid loan of some years' standing, which is not diminished on account of his son's adverse position in the incompetency proceeding. The testator is also incensed with his former attorney, Mr. Norton, with whom he is in litigation on account of the bill for legal services, which he believed to be exorbitant. The testator lived nearly a year after the execution of this will. He had abundant opportunity for reflection and consideration; and, in the month of September, 1903, through the interposition of friends, he entered into an agreement with his wife, which he fulfilled, whereby he paid her $15,-000 in cash and securities, and deeded to her certain real property. In consideration for this she agreed to release him and his estate from any further claim; this settlement being equivalent to more than one-third of his entire estate. Taking into consideration all of these circumstances, the proposed disposition of his estate, as expressed in his last will, does not impress me as being otherwise than reasonable and natural from the testator's point of view.

The will was in the handwriting of the testator, and contains a full attestation clause. All of the formalities required by statute for the proper execution of a will have been sworn to by three witnesses, who are disinterested, and of unusual intelligence: Joseph Viertel, a letter-carrier, who had known the testator for 20 years; Charles S. Dakin, a neighbor and acquaintance; and Dr. Himmelsbach, who had been his attending physician for a year and a half preceding his death. The details of signing and witnessing the document are sworn to with exceeding accuracy. All testify that the testator was sober at the time, and Dr. Himmelsbach testifies positively as to the sound mental condition of the testator; that he had a conversation with Tifft, in which he related reasons for changing his will, and of his troubles with his wife and lawyer Norton. The only evidence of a serious nature relating to the testamentary capacity of the decedent, offered by the contestants to the last will, is that of Dr. Putnam, who is an alienist of high reputation. Dr. Putnam was present during the incompetency proceeding and had some opportunity to observe the testator; but his answer "that the decedent was suffering from chronic alcoholic insanity" is predicated upon an hypothetical question which, in my opinion, did not embrace many salient facts developed upon the trial. Matter of Seagrist, 1 App. Div. 621, 37 N. Y. Supp. 496. Where there is a conflict as between expert testimony and the testimony of subscribing witnesses to a will, especially where one of the witnesses is a practicing physician with unusual opportunities for diagnosis, examination and observation of the testator, in my opinion, the evidence of the subscribing witnesses should prevail over that of an expert. Matter of O'Connor, 29 Misc. Rep. 391, 61 N. Y. Supp. 910; Philips v. Philips, 77 App. Div. 113, 78 N. Y. Supp. 1001. Abundant evidence was introduced on the trial showing the excessive use of intoxicating liquor on the part of the testator, but there is an entire absence of proof showing that Tifft's mentality was affected whereby he at any time appears to have lost his business shrewdness, or ability to care for his property.

The highest degree of mentality is not required in a testator to permit of his making a will; and a drunkard may make a valid will, if,

at the time of its execution, he comprehends the nature, extent, and the disposition of his estate, his relations to those who have or might have a claim upon his bounty, and is free from fraud or coercion. A drunkard is not incompetent, like an idiot, or one generally insane. He is simply incompetent upon proof that, at the time of the act challenged, his understanding was clouded, or his reason dethroned by actual intoxication. Peck v. Cary, 27 N. Y. 9, 84 Am. Dec. 220; Matter of Reed, 2 Con. Sur. 403, 20 N. Y. Supp. 91; Matter of Woolsey, 17 Misc. Rep. 547, 41 N. Y. Supp. 263; Matter of Halbert, 15 Misc. Rep. 308, 37 N. Y. Supp. 757. In Matter of Johnson, 7 Misc. Rep. 220, 27 N. Y. Supp. 649, testator had been addicted to the use of intoxicating liquors for many years, had suffered delirium tremens, was an inmate of an inebriate asylum, and, shortly before the execution of his will, had fallen into an epileptic fit, yet it was held that he had testamentary capacity, and his will was admitted to probate. I am satisfied that the last will of the testator was the result of due deliberation; that he was of sound and disposing mind and memory within contemplation of law; that no undue influence has been proven; and that the instrument was properly executed.

A decree may be entered probating the will in accordance with this memorandum.

Probate decreed.